72 F.3d 129
 RICO Bus.Disp.Guide 8958
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Phillip M. KABEALO, Plaintiff-Appellant,
and
Charles L. Kabealo, Plaintiff,
v.
Michael DAVIS, c/o Society Bank, Christopher L. White and
Donald F. Moorehead, Jr., Defendants-Appellees.
 No. 94-4103.
 United States Court of Appeals, Sixth Circuit.
 Dec. 1, 1995.
 
 Before: CONTIE, MILBURN, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Phillip M. Kabealo, appeals the order of the district court, granting summary judgment to defendants-appellees, Christopher L. White and Donald F. Moorehead, in this action alleging a violation of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. Sec. 1962, and the Ohio Racketeering Statute, Ohio Rev.Code Sec. 2923.31, and state law claims of fraud, breach of fiduciary duty, and breach contract.[1]
 
 I.
 
 2
 During the 1970s, plaintiff Kabealo incorporated Buckeye Waste Control, Inc. ("BWC"), a trash-hauling company. By 1984, the business was experiencing financial problems and plaintiff Kabealo brought defendants Moorehead and White into the business as BWC's general manager and operation manager respectively. Through an agreement dated July 2, 1984, defendants White and Moorehead each received twenty-five percent of BWC's stock and became directors and officers of the company.
 
 
 3
 During the summer of 1984, plaintiff and defendants decided to start a company known as North Shore Waste Control, Inc. for the purpose of acquiring an Illinois waste control company and expanding it as a business. To this end, on August 14, 1984, a written stock subscription agreement (hereinafter, "the subscription agreement") was signed by plaintiff, defendants, and defendant Moorehead's brother, George, for the issuance of North Shore stock in their official capacity as corporate officers and directors. The agreement provided that plaintiff would subscribe to 20 shares of the stock. However, no shares were issued by North Shore pursuant to this agreement, and it is not alleged by plaintiff that he or BWC ever tendered the purchase price of the shares pursuant to the North Shore subscription agreement.
 
 
 4
 During the fall of 1984, BWC continued to have financial difficulties, and on November 7, 1984, plaintiff and defendants entered into a close corporation agreement in which a controlling interest in BWC was conveyed to defendants.
 
 
 5
 In January 1985, plaintiff initiated negotiations with Laidlaw Waste Systems to discuss the possibility of Laidlaw acquiring BWC. BWC was debt-ridden and Laidlaw only wanted to purchase BWC if it were debt-free. Because plaintiff was unwilling to give Laidlaw warranties concerning the debts and assets of BWC, plaintiff decided to enter into an agreement with defendants to sell his shares in BWC to defendants so that defendants could then sell BWC to Laidlaw with the required warranties that the company was debt-free. This agreement between plaintiff and defendants was entered into on March 23, 1985, and paragraph eight contained a release of any claims or causes of action between plaintiff and defendants, including a release of claims in regard to North Shore, which was considered a third-party beneficiary for that purpose.
 
 
 6
 Once they agreed to buy plaintiff's shares of BWC, defendants began negotiating with BWC's creditors for the purpose of reducing or compromising BWC's debts so that BWC could be sold debt-free to Laidlaw. Although plaintiff was invited to participate in these negotiations, he declined to do so. On April 17, 1985, the closing for Laidlaw's purchase of BWC's stock from defendants was held simultaneously with the closing of the March 23, 1985 agreement, in which plaintiff agreed to sell his shares of BWC stock to defendants. Plaintiff's attorney, Jack McCormick, acted on plaintiff's behalf and attended this closing. The Laidlaw purchase agreement was distributed at the closing and reflected the fact that defendants White and Moorehead each owned one-third of North Shore.[2] Plaintiff received a total of $97,875.50 for selling his BWC shares to defendants pursuant to the March 23, 1985 agreement, which contained a release of claims and causes of action between the parties, including a release of claims in regard to North Shore.
 
 
 7
 The proceeds of the sale of BWC were not sufficient to satisfy all of BWC's creditors. In order to fulfill their obligation that BWC be sold to Laidlaw debt-free, defendants negotiated with Huntington National Bank ("HNB"), the major creditor of BWC, and the bank agreed to accept $780,546.53 in satisfaction of BWC's debt. This was approximately $100,000 less than what was owed by BWC to Huntington.[3] However, HNB decided to proceed against plaintiff on a prior loan for $32,000 based upon a note of July 24, 1984, which was signed by plaintiff in his personal capacity and which did not indicate that BWC was a party to the note. Another creditor of BWC, Delaware County Bank, received $133,289.65 from BWC toward a loan the bank had given to BWC. Plaintiff had personally guaranteed this loan. As a result of the payment, the Delaware County Bank released BWC from any further obligation under the note, and decided instead to proceed against plaintiff on his personal guarantee for the balance of the loan, $39,939.97 plus interest.
 
 
 8
 On November 7, 1988, plaintiff filed an action in federal district court against defendants, the Huntington National Bank, and Michael Davis, an employee of the bank. The complaint alleged that HNB violated the Bank Holding Company Act, 12 U.S.C. Sec. 1971 as a basis for federal jurisdiction and pendent state law claims. On June 6, 1990, the district court dismissed without prejudice plaintiff's complaint for lack of federal subject matter jurisdiction and declined to exercise pendent jurisdiction over the state law claims.
 
 
 9
 On May 30, 1991, plaintiff filed a complaint against the individual defendants in the Common Pleas Court of Franklin County, Ohio. This complaint contained essentially the same factual allegations in regard to state law as the prior complaint before the federal district court. On June 7, 1993, plaintiff moved for leave to file an amended complaint, and defendants consented to the amendment. In the amended complaint, plaintiff retained his previous state law claims of fraud, breach of contract, and breach of fiduciary duty based on allegations that defendants misled him concerning the purchase price for BWC, that he did not receive fair value for his interest in BWC, and that defendants structured the sale of BWC so that plaintiff was saddled with debt exceeding the proceeds from his sale of BWC stock. The amended complaint also contained new allegations which instead of focusing on the sale of BWC focused on the North Shore subscription agreement. Plaintiff added claims under RICO, 18 U.S.C. Sec. 1962 and Ohio Rev.Code Sec. 2923.31. In regard to the new claims concerning North Shore, plaintiff alleged that defendants used their control of BWC to steal all of plaintiff and BWC's interest in North Shore and refused to honor the North Shore stock subscription agreement of November 14, 1984, indicating plaintiff should have 20 shares of North Shore stock. On June 23, 1993, defendants filed a notice of removal of the amended complaint, and the case was removed to federal court. Plaintiffs made a motion to remand the case to state court, but this motion was denied on September 9, 1993.
 
 
 10
 On November 24, 1993, defendants filed a motion for summary judgment in regard to plaintiff's claims concerning plaintiff's purported interest in North Shore, which was granted by the district court in an opinion and order of May 12, 1994. On June 8, 1994, defendants filed a motion for summary judgment regarding plaintiff's remaining claims, which concerned the sale of BWC. On July 26, 1994, the district court granted defendants' second motion for summary judgment and dismissed plaintiff's remaining claims.[4] On October 13, 1994, plaintiff timely filed an appeal.
 
 II.
 
 11
 We must first decide whether the district court erred on September 9, 1993 in denying plaintiff's motion to remand the case to state court. In the present case, plaintiff made no attempt to obtain interlocutory review of the denial of his request for remand, and the action proceeded to a determination on the merits, when the district court granted defendants' motions for summary judgment. A denial of a motion to remand when no attempt has been made to obtain interlocutory review of the denial is limited on appellate review to a determination of whether the district court would have had jurisdiction had the case initially been filed in that court. Estate of Bishop v. Bechtel Power Corp., 905 F.2d 1272, 1275 (9th Cir.1990). If it is found that the district court had jurisdiction over the action, the denial of the motion to remand must be affirmed. Id.
 
 
 12
 In the present case, the district court would have had original jurisdiction over the action under 28 U.S.C. Sec. 1331 because the amended complaint included a claim arising under the laws of the United States, alleging a RICO violation pursuant to 18 U.S.C. Sec. 1962. Because the district court had jurisdiction over this federal cause of action, the denial of the motion to remand is affirmed.
 
 III.
 
 13
 Plaintiff also contends on appeal that plaintiff's amended complaint of June 7, 1993, which was filed in state court and removed to federal court, related back to his previous federal complaint of November 7, 1988 for statute of limitation purposes. Defendants asserted before the district court that plaintiff's claims of fraud, breach of fiduciary duty, and racketeering under RICO and Ohio Rev.Code Sec. 2923.31 in regard to the North Shore subscription agreement were barred by the applicable statutes of limitations because the original federal complaint did not raise in any manner allegations of wrongdoing arising out of the North Shore stock subscription agreement entered into in 1985. The district court agreed.
 
 
 14
 For the reasons stated in the district court opinion of May 12, 1994, we find the district court properly concluded that neither Fed.Rule C.Pro., Rule 15(c) nor Ohio Rev.Code Sec. 2305.19, the Ohio savings statute, allows the relation back of the amended 1993 complaint to plaintiff's 1988 complaint for statute of limitation purposes. The district court correctly granted summary judgment on these claims because they were barred by the applicable statutes of limitations.
 
 IV.
 
 15
 Plaintiff also argues that the district court erred in granting summary judgment to defendants in regard to plaintiff's claims concerning the sale of BWC to Laidlaw. Plaintiff claimed that defendants falsely represented Laidlaw's purchase price for BWC to him, leading him to believe that his personal debt to Huntington National Bank would be satisfied by the sale of BWC. Plaintiff also alleged that defendants made fraudulent statements to creditors concerning the Laidlaw purchase price for BWC and selectively negotiated with creditors in such a way that the debts of plaintiff to Huntington National Bank and Delaware County Bank were not satisfied by the sale of BWC. Based on these allegations, plaintiff brought claims against defendants for fraud and breach of fiduciary duty under Ohio law, and a claim under RICO, 18 U.S.C. Sec. 1961.
 
 
 16
 For the reasons stated in the district court opinion of July 26, 1994, we agree with the district court that no genuine issue of material fact has been demonstrated in regard to plaintiff's state law claims of fraud and breach of fiduciary duty and defendants are entitled to summary judgment on these claims. The evidence in the record does not support plaintiff's allegations that defendants were responsible for misrepresentations or omissions concerning the purchase price of BWC or the sufficiency of the purchase price to cover all of BWC's debts. The record also does not support plaintiff's contention that he was unaware of BWC's financial condition or that he did not know that the proceeds of the sale of BWC would not cover all of BWC's outstanding debts. The evidence does not establish that defendants made any false statements or material omissions to plaintiff in regard to the satisfaction of BWC's debts. Therefore, the district court is affirmed on this issue.
 
 
 17
 For the reasons stated in the district court opinion of July 26, 1994, we also find that defendants were entitled to summary judgment on plaintiff's RICO claims pursuant to 18 U.S.C. Secs. 1962(a)-(c). Plaintiff alleged as a predicate act in his RICO case false statements by mail or wire made by defendants to creditors about impending bankruptcy and the inability of BWC to pay all debts when, in fact, the amount paid by Laidlaw exceeded these debts. As noted above, there is no evidence sufficient to create a genuine issue of material fact as to the purchase price for BWC. Plaintiff also failed to establish a series of related acts involving fraud and therefore failed to demonstrate that he could prove the "pattern requirement" of RICO claims under 18 U.S.C. Secs. 1962(a), (b), and (c). H.T. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989). The district court is affirmed on this issue, because if one of the RICO requirements is not met, then plaintiff does not state a RICO claim. Sedima, S.P.R.L. v. Imrex Corp., 473 U.S. 479 (1985).
 
 V.
 
 18
 To conclude, the district court did not err in its order of September 9, 1993, denying plaintiff's motion to remand and the order is affirmed. The district court's opinion of May 12, 1994, granting defendants' motion for summary judgment in regard to plaintiff's North Shore claims is affirmed. The district court's opinion of July 26, 1994, granting defendants' motion for summary judgment in regard to plaintiff's remaining claims concerning the sale of BWC, is affirmed. Therefore, the judgment of the district court is hereby AFFIRMED.
 
 
 
 [1]
 A previous plaintiff, Charles Kabealo, and previous defendants, Huntington Bank and Michael Davis as a representative of the Huntington Bank, are no longer parties to this lawsuit. For purposes of this opinion, the use of the word "defendants" refers only to defendant White and defendant Moorehead, the only appellees in this appeal
 
 
 [2]
 The remaining one-third of North Shore was owned by defendant Moorehead's brother, George Moorehead. Defendants eventually sold their interest in North Shore to Mid-American Waste Systems, Inc., another corporation formed by defendants
 
 
 [3]
 This debt reduction included some of the debt which BWC incurred when plaintiff had been the major shareholder and had obtained loans on the company's behalf
 
 
 [4]
 The judgment did not, however, resolve a counterclaim, which defendants had filed and which was pending against plaintiff. On August 23, 1994, plaintiff filed a notice of appeal of the orders granting summary judgment to defendants and dismissing his claims. On August 29, plaintiff was directed to show cause why the appeal should not be dismissed for lack of jurisdiction because all the claims (specifically the counterclaim) had not been resolved. In response, plaintiff submitted a copy of a September 14, 1994, order of the district court, certifying its judgment on plaintiff's claims as final pursuant to Rule 54(b), Federal Rule of Civil Procedure